UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Mark Cade Roberts and Leanne Roberts,<br><br>Plaintiffs,<br><br>vs.<br><br>The South Carolina Department of Public Safety, Ryan King, Alonszo Harrison, Walton Flowers, The Marion County Sheriff's Office, Sheriff Brian Wallace, Aurelius Cribb, The South Carolina Department of Natural Resources, Alex Branham, and Cody Britt,<br><br>Defendants. | CASE NO.: _____<br><br><br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

The Plaintiffs, Mark Cade Roberts and Leanne Roberts, complaining of the Defendants, The South Carolina Department of Public Safety, Ryan King, Alonszo Harrison, Walton Flowers, The Marion County Sheriff's Office, Aurelius Cribb, The South Carolina Department of Natural Resources, Alex Branham, and Cody Britt, allege as follows:

**NATURE OF CASE**

1. This civil action against multiple individual law enforcement officers and law enforcement agencies arises from an impermissible and unlawful law enforcement vehicle pursuit that began because of a defective headlight and ultimately lasted more than 17 minutes and involved speeds in excess of 140 MPH, collisions between law enforcement vehicles and the fleeing vehicle, and wrong way driving against the flow of traffic for more than 5 minutes, all of which presented an unreasonable danger to the motoring public. The officers, like cowboys attempting to herd cattle into a corral, pushed and funneled the fleeing driver onto the Pee Dee River Bridge where he collided head-on with Plaintiffs, resulting in catastrophic injuries and significant damages.

1

2. Plaintiff Mark Cade Roberts ("Cade") believes that it is never safe, excusable, or lawful for a driver to flee from law enforcement. He has sought for the fleeing driver in this instance to be held accountable for his actions through the criminal justice system in the hopes that the fleeing driver can reform his errant ways and eventually rejoin society as a productive citizen after he has served the punishment for his crimes.

3. At the same time, Cade believes that the potential for drivers to fail to stop for blue lights and to flee at high speed is well known to law enforcement officers, who are trained regarding what to do in these situations, but who, with increasing frequency, are disregarding that training, failing to terminate these pursuits when the danger posed by the pursuit outweighs the need to immediately apprehend the fleeing driver, and driving without due regard for the safety of others, thereby encouraging and allowing fleeing drivers to continue to drive at high speeds and engage in reckless maneuvers, often resulting in tragic collisions with innocent bystanders.  Under our system of justice, Cade can only seek to hold these officers and their agencies responsible for the consequences of their actions and omissions through the civil justice system.

4. The choices made by these law enforcement officers and agencies have put Cade, through no fault of his own, in the uncomfortable position of seeking redress from a jury of his peers. While acknowledging the hard work and sacrifice made by many law enforcement officers across our state and our country whom he personally supports, he must ask the members of that jury to recognize the significant failures by the law enforcement officers and agencies involved in this matter and issue a verdict against those officers and agencies for damages in an amount sufficient to make Cade whole for his injuries and damages.  In an attempt to prevent impermissible and unlawful law

enforcement vehicle pursuits from occurring in the future, resulting in injuries to more innocent people, Cade is also seeking punitive damages in an amount sufficient to punish these individuals for their conscience-shocking indifference to the well-established rights of others and to deter all other law enforcement officers from similar improper and unlawful conduct. Cade hopes this will help end the scourge of improper law enforcement vehicle pursuits in South Carolina, which have caused life altering injuries, ended lives, and torn apart families with increasing frequency across this State for too long. Cade generally holds law enforcement in high regard, but he feels that there is no other course of action that will enable him to be made whole and to protect other citizens of this state from suffering harm caused by senseless high-speed vehicle pursuits by law enforcement.

## PARTIES, JURISDICTION & VENUE

5. Plaintiff Mark Cade Roberts ("Cade") is a citizen and resident of Newberry County, South Carolina.

6. Plaintiff Leanne Roberts ("Leanne") is a citizen and resident of Newberry County, South Carolina and, at all times relevant to this action, was and is the lawful wife of Cade.

7. Defendant South Carolina Department of Public Safety ("SCDPS") is a governmental entity and agency of the State of South Carolina, which maintains its principal place of business in Richland County, South Carolina.

8. Defendant Ryan King ("King") was employed as a law enforcement officer by SCDPS and, at all times herein, was acting in the course and scope of his employment and under color of law. King is sued in his individual capacity under 42 U.S.C. § 1983, 42 U.S.C.

3

§ 1988, the Fourteenth Amendment to the United States Constitution, *Dean v. McKinney*, 976 F.3d 407 (4th Cir. 2020) (cert. denied), *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170 (4th Cir. 2023), *Doe v. Rosa*, 795 F.3d 429 (4th Cir. 2015), and their progeny. Upon information and belief, King is a citizen and resident of Florence County, South Carolina.

9.   Defendant Alonszo Harrison ("Harrison") was employed as a law enforcement officer by SCDPS and, at all times herein, was acting in the course and scope of his employment and under color of law. Harrison is sued in his individual capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1988, the Fourteenth Amendment to the United States Constitution, *Dean v. McKinney*, 976 F.3d 407 (4th Cir. 2020), *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170 (4th Cir. 2023), *Doe v. Rosa*, 795 F.3d 429 (4th Cir. 2015), and their progeny. Upon information and belief, Harrison is a citizen and resident of Florence County, South Carolina.

10.  Defendant Walton Flowers ("Flowers") was employed as a law enforcement officer by SCDPS and, at all times herein, was acting in the course and scope of his employment and under color of law. Flowers is sued in his individual capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1988, the Fourteenth Amendment to the United States Constitution, *Dean v. McKinney*, 976 F.3d 407 (4th Cir. 2020), *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170 (4th Cir. 2023), *Doe v. Rosa*, 795 F.3d 429 (4th Cir. 2015), and their progeny. Upon information and belief, Flowers is a citizen and resident of Florence County, South Carolina.

11.  The Marion County Sheriff's Office ("MCSO") is a governmental entity and political subdivision of the State of South Carolina, which maintains its principal place of

business in Marion County, South Carolina.

12. Defendant Brian Wallace ("Sheriff Wallace") is the Sheriff of Marion County and, as such, is a governmental entity and political subdivision of the State of South Carolina. Sheriff Wallace is sued in his official capacity and is named only to the extent that MCSO takes the position that it is not a legal entity and/or governmental entity.

13. Aurelius Cribb ("Cribb") was employed as a law enforcement officer by MCSO and/or Sheriff Wallace and, at all times herein, was acting in the course and scope of his employment and under color of law. Cribb is sued in his individual capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1988, the Fourteenth Amendment to the United States Constitution, *Dean v. McKinney*, 976 F.3d 407 (4th Cir. 2020), *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170 (4th Cir. 2023), *Doe v. Rosa*, 795 F.3d 429 (4th Cir. 2015), and their progeny. Upon information and belief, Cribb is a citizen and resident of Marion County, South Carolina.

14. The South Carolina Department of Natural Resources ("SCDNR") is a governmental entity and agency of the State of South Carolina, which maintains its principal place of business in Lexington County, South Carolina.

15. Alex Branham ("Branham") was employed as a law enforcement officer by SCDNR and, at all times herein, was acting in the course and scope of his employment and under color of law. Branham is sued in his individual capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1988, the Fourteenth Amendment to the United States Constitution, *Dean v. McKinney*, 976 F.3d 407 (4th Cir. 2020), *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170 (4th Cir. 2023), *Doe v. Rosa*, 795 F.3d 429 (4th Cir. 2015), and their progeny. Upon information and belief, Branham is a citizen and resident of

Marion County, South Carolina.

16. Cody Britt ("Britt") was employed as a law enforcement officer by SCDNR and, at all times herein, was acting in the course and scope of his employment and under color of law. Britt is sued in his individual capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1988, the Fourteenth Amendment to the United States Constitution, *Dean v. McKinney*, 976 F.3d 407 (4th Cir. 2020), *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170 (4th Cir. 2023), *Doe v. Rosa*, 795 F.3d 429 (4th Cir. 2015), and their progeny. Upon information and belief, Britt is a citizen and resident of Marion County, South Carolina.

17. Plaintiffs bring this action in this Division as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

18. Plaintiffs invoke this Court's concurrent jurisdiction to hear claims existing alongside and arising from the same facts and circumstances as those arising under the United States Constitution, the Fourteenth Amendment to the United States Constitution, and federal statutes 42 U.S.C. §§ 1983, 1988.

## FACTUAL ALLEGATIONS

19. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if set forth verbatim herein.

20. On September 1, 2022, Trayawn Burgess ("Burgess") was pulled over by King for an equipment failure.  Specifically, one of the headlights on Mr. Burgess' vehicle was inoperable.

21. After initially pulling over, Mr. Burgess made the terrible decision to flee from law enforcement.  He sped away from King in an attempt to evade him and set in motion a

sequence of events that would inevitably result in tragedy. However, Burgess does not bear all or even most of the fault for the impending tragedy.

22. What ensued was an impermissible, illegal, unconscionable, and reckless high-speed vehicle pursuit involving five (5) law enforcement officers from three (3) different law enforcement agencies, each of whom acted as the primary or lead pursuit officer at varying points during the pursuit.

23. This vehicle pursuit occurred at night and, at times, in the presence of heavy traffic. It lasted approximately 17 minutes and 45 seconds. The vehicles involved in the pursuit reached speeds in excess of 140 miles per hour. Jamison and King were the primary pursuit officers, and Flowers was their supervisor, monitoring the pursuit and their actions for roughly the first 12 minutes of the pursuit. At one point, Flowers authorized King to perform a "PIT maneuver" in an attempt to disable the fleeing vehicle, but Burgess continued to evade King and Jamison, evidencing his clear intention to get away or die trying.

24. The vehicle pursuit involved multiple distinct instances of reckless driving, including, but certainly not limited to, a more than 5-minute stretch of time of time where the fleeing driver was wrong-way driving against the flow of oncoming traffic while being pursued by Cribb up to the Pee Dee River Bridge, and then by Branham and Britt on to the bridge, where oncoming vehicles had no avenue of escape to avoid the oncoming peril. It was not a question of if, but when, there would be a head-on collision with an uninvolved, innocent, bystander vehicle.

25. That moment came as Cade was lawfully operating his vehicle in its proper lane on the Pee Dee River Bridge when, suddenly and without warning, Burgess, while wrong-way

driving against the flow of traffic on the bridge at high speed with Branham and Britt is close pursuit, collided head on with Cade.

26. Cade suffered catastrophic bodily injuries and has incurred substantial damages as a result of this collision.

27. While it is never safe, excusable, or lawful for a driver to flee from law enforcement, the potential for it to occur is well known to law enforcement officers, who are trained regarding what to do in these situations.

28. This includes training on the United States Constitution, Amendments thereto, cases interpreting the same, South Carolina statutory law (including S.C. Code Ann. §56-5-760), individual agency policies and procedures, and nationally accepted industry standards regarding vehicle pursuits.

29. This training is specifically intended to provide these law enforcement officers with knowledge that they can apply to the facts and circumstances of individual vehicle pursuits to ensure that they are properly and legally performing their duties without creating unreasonable risk of injury or death to other motorists on the roadway.

30. Law enforcement officers are trained that they must always terminate a vehicle pursuit when the danger posed to the public by the pursuit (due to, e.g. speeds, location, direction of travel, volume and density of other traffic, daylight conditions, mechanical condition of vehicles, reckless maneuvers by vehicles, number of vehicles involved, etc.) outweighs the need to immediately apprehend the fleeing driver (based on the nature and seriousness of the underlying offense). This is often referred to as the "balancing test" rule.

31. Law enforcement officers are trained that they must always drive with due regard for

the safety of all other motorists on the roadway. This is often referred to as the "due regard for safety" rule.

32. Law enforcement officers are trained that, when they violate the "balancing test" rule or the "due regard for safety" rule, the violation is impermissible and/or illegal pursuant to one or more of the following:

    a.   The United States Constitution, Amendments thereto, and cases interpreting the same;

    b.   South Carolina statutory law (including S.C. Code Ann. §56-5-760);

    c.   Individual departmental policies, procedures and general orders; and

    d.   Nationally accepted industry standards.

33. Law enforcement officers are trained that, when they violate the "balancing test" rule or the "due regard" rule, it can result in discipline by their employer up to and including termination; subject the officer to civil liability under federal law for the violation of clearly established constitutional rights under color of law, including the Fourteenth Amendment right to due process; and subject the officer's employer to civil liability under state law for the officer's recklessness, negligence, and negligence per se.

34. An objectively reasonable law enforcement officer involved in a vehicle pursuit would have received this training, would have been aware of these rules and clearly established constitutional rights, would have known that his violation of these rules would subject the officer and his employer to civil liability. King, Jamison, Flowers, Cribb, Branham, and Britt each testified to this effect in their depositions.

35. Indeed, in this instance, King, Jamison, Flowers, Cribb, Branham, and Britt were each subjectively aware of these rules and clearly established constitutional rights at the time

of their misconduct.  King, Jamison, Flowers, Cribb, Branham, and Britt each testified to this effect in their depositions.

36.  Despite their testimony that they were aware of the rules governing vehicle pursuits and the consequences for breaking those rules, King, Jamison, Flowers, Cribb, Branham, and Britt each broke them, although only some of them had the integrity to admit this in their depositions.

37. King, Jamison, Flowers, Cribb, Branham, and Britt had a duty to properly apply the "balancing test" and each of them failed to do so.

38. In this instance, the danger posed by the pursuit was HIGH due to the following factors and circumstances:

  a.  The vehicle pursuit involved five (5) different law enforcement officers from three (3) different law enforcement agencies as the primary pursuit officer at various times, and there were additional law enforcement vehicles participating as well;

  b.  The vehicle pursuit lasted approximately 17 minutes and 45 seconds;

  c.  The pursuit traveled many miles across multiple counties;

  d.  The vehicles involved in the pursuit reached speeds in excess of 140 miles per hour;

  e.  The vehicle pursuit involved multiple distinct instances of reckless driving including, but certainly not limited to, a more than 5-minute stretch of time of time where the fleeing driver was wrong-way driving against the flow of oncoming traffic while being pursued by Cribb up to the Pee Dee River Bridge, and then by Branham and Britt on to the Bridge, where oncoming vehicles had

no avenue of escape to avoid the oncoming peril;

f.  The vehicle pursuit occurred at nighttime, when visibility is reduced;

g.  The vehicle pursuit occurred in the presence of ever-increasing volume and density of bystander traffic; and

h.  It was clear to the officers that the fleeing driver did not intend to stop fleeing short of his vehicle becoming disabled in some manner, including potentially through a collision with a bystander vehicle.

39. In this instance, the need to immediately apprehend Burgess was LOW due to the following factors and circumstances:

a.  A vehicle pursuit cannot be self-justifying.  In other words, the fact that a suspect fails to stop for blue lights is not itself grounds to pursue;

b.  Rather, one must look to the underlying offence for which law enforcement originally initiated blue lights to determine the need to apprehend;

c.  In this instance, the underlying offense that caused law enforcement to initiate blue lights and stop Burgess was an equipment violation;

d.  The specific equipment violation was that one of Burgess' vehicle's headlights was inoperable;

e.  This equipment violation was a mere traffic offense; and

f.  Law enforcement had no knowledge that Burgess had committed any crimes against any property or person at that time.

40. King, Jamison, Flowers, Cribb, Branham, and Britt each had a duty to terminate the pursuit at various points in time during the pursuit pursuant to and based upon their training on the United States Constitution, the Amendments thereto, the cases

interpreting the same, South Carolina statutory law (including S.C. Code Ann. §56-5-760), individual departmental policies and procedures, and nationally accepted industry standards and each of them breached this duty by failing to terminate the pursuit.

41. King, Jamison, Cribb, Branham, and Britt each had a duty to drive with due regard for the safety of others and each of them violated this duty by pushing and funneling Burgess onto the Pee Dee River Bridge like cowboys herding cattle.

42. King, Jamison, Flowers, Cribb, Branham, and Britt each subjectively recognized that their conduct posed a substantial risk of harm to the general public, including Cade, prior to the collision.

43. King, Jamison, Flowers, Cribb, Branham, and Britt, individually and collectively, had sufficient time to consider and evaluate their conduct and whether it was violative of well-established legal standards prior to the collision.

44. King, Jamison, Flowers, Cribb, Branham, and Britt, individually and collectively, had sufficient time to deliberate and exercise judgment as to the propriety and lawfulness of their conduct prior to the collision with Cade.

45. King, Jamison, Flowers, Cribb, Branham, and Britt's conduct, individually and collectively, was reckless and created a substantial risk of harm to the general public, including Cade.

46. King, Jamison, Flowers, Cribb, Branham, and Britt's conduct, individually and collectively, violated clearly established federal law and the United States Constitution.

47. King, Jamison, Flowers, Cribb, Branham, and Britt's conduct, individually and collectively, exhibited conscience-shocking deliberate indifference to the lives and safety of the general public, including Cade.

48. As a direct and proximate result of the careless, reckless, negligent, grossly negligent, and negligent per se actions and omissions of King, Jamison, Flowers, Cribb, Branham, Britt, SCDPS, MCSO, Sheriff Wallace, and SCDNR, Cade suffered catastrophic injuries and incurred substantial damages.

49. Cade has suffered catastrophic bodily injury, which is permanent in nature, and will negatively impact him in myriad ways for the rest of his life.

50. Cade has incurred economic loss in the form of past medical bills, future medical bills, past wage loss, and future diminution of earning capacity.

51. Cade has incurred non-economic loss in the form of pain and suffering, mental anguish, emotional upset, loss of enjoyment of life, permanent impairment, and disfigurement.

52. Cade is entitled to a verdict against King, Jamison, Flowers, Cribb, Branham, Britt, SCDPS, MCSO, Sheriff Wallace, and SCDNR for actual damages in an amount sufficient to make him whole for his injuries and his past and future economic and noneconomic damages.

53. Cade is also entitled to a verdict against King, Jamison, Flowers, Cribb, Branham, and Britt for punitive damages in an amount sufficient to punish these individuals for their conscience-shocking indifference to the well-established rights of others and to deter all other law enforcement officers from similar improper and unlawful conduct, in the hope that it will help end the scourge of improper law enforcement vehicle pursuits in South Carolina, which have ended lives and torn apart families with increasing frequency across this State in recent years.

## FOR A FIRST CAUSE OF ACTION
### (42 U.S.C. 1983 and 1988 – 14th Amendment Violation of Due Process)
### Defendants King, Jamison, Flowers, Cribb, Branham, and Britt

54. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if set forth verbatim herein.

55. King, Jamison, Flowers, Cribb, Branham, and Britt's reckless conduct in the course of this vehicle pursuit, which evidenced a conscious disregard for the rights of others, constitutes a conscience-shocking deliberate indifference to the lives and safety of the general public in violation of Cade's Fourteenth Amendment Rights.

56. King, Jamison, Flowers, Cribb, Branham, and Britt's conduct violated 42 U.S.C. §1983 while acting under color of law by depriving Cade of the following clearly-established and well-settled constitutional rights protected by the Fourteenth Amendment to the U.S. Constitution:

   a. The right to be free of unlawful, reckless, deliberately indifferent, and conscience-shocking conduct as secured by the Fourteenth Amendment;

   b. The right to be free from deprivation of life, limb and property without substantive due process and from state-created/enhanced danger as secured by the Fourteenth Amendment;

   c. And in such other particulars as may be learned through discovery.

57. King, Jamison, Flowers, Cribb, Branham, and Britt had sufficient time to consider and evaluate their conduct, and to deliberate about whether it was violative of the United States Constitution, South Carolina statutory law, well-established legal standards, and agency policies, procedures and general orders.

58. King, Jamison, Flowers, Cribb, Branham, and Britt had sufficient time to exercise judgment as to the propriety and lawfulness of their conduct resulting in the collision.

59. King, Jamison, Flowers, Cribb, Branham, and Britt either knew or had fair warning that their conduct was impermissible and illegal under the United States Constitution, South Carolina statutory law, well-established legal standards, and agency policies, procedures and general orders.

60. A reasonable law enforcement officer in King, Jamison, Flowers, Cribb, Branham, and Britt's positions would have never reasonably believed that their conduct was permissible under the United States Constitution, South Carolina statutory law, well-established legal standards, and agency policies, procedures and general orders.

61. King, Jamison, Flowers, Cribb, Branham, and Britt's conduct was so egregious, and so outrageous, that it may fairly be said to shock the contemporary conscience and exhibit deliberate indifference, consistent with the holdings in *Dean v. McKinney*, 976 F.3d 407 (4th Cir. 2020) (cert. denied) and *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170 (4th Cir. 2023).

62. As a direct and proximate result of the conscience-shocking and deliberately indifferent conduct by King, Jamison, Flowers, Cribb, Branham, and Britt, Cade suffered catastrophic injuries and incurred substantial damages.

63. Cade has suffered catastrophic bodily injury, which is permanent in nature, and will negatively impact him in myriad ways for the rest of his life.

64. Cade has incurred economic loss in the form of past medical bills, future medical bills, past wage loss, and future diminution of earning capacity.

65. Cade has incurred non-economic loss in the form of pain and suffering, mental anguish, emotional upset, loss of enjoyment of life, permanent impairment, and disfigurement.

66. Cade is entitled to recover actual and punitive damages from King, Jamison, Flowers,

Cribb, Branham, and Britt, in am amount to be determined by a jury, as well as reasonable attorney's fees pursuant to 42 U.S.C. § 1983 and § 1988.

### FOR A SECOND CAUSE OF ACTION
**(42 U.S.C. § 1983 and § 1988 – State-Created Danger)**
**Defendants King, Jamison, Flowers, Cribb, Branham, and Britt**

67. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if set forth verbatim herein.

68. King, Jamison, Flowers, Cribb, Branham, and Britt are liable for their unconstitutional actions in creating the dangerous situation that resulted in Cade's catastrophic injuries and substantial damages.

69. King, Jamison, Flowers, Cribb, Branham, and Britt created or increased the risk of private danger and they did so directly through their affirmative acts.

70. King, Jamison, Flowers, Cribb, Branham, and Britt failed to terminate this vehicle pursuit when it became clear to each of them that the danger posed by the pursuit to the public outweighed the need to apprehend.

71. King, Jamison, Flowers, Cribb, Branham, and Britt intractably pursued the fleeing driver as he drove the wrong way, against the flow of traffic, at high speed, for over five minutes.

72. King, Jamison, Flowers, Cribb, Branham, and Britt failed to terminate the pursuit and, in fact, pushed and funneled Burgess onto the Pee Dee River Bridge, where a head-on collision was inevitable.

73. King, Jamison, Flowers, Cribb, Branham, and Britt violated 42 U.S.C. §1983 while acting under color of law in the following respects:

    a.  In engaging in conduct, actions, or omissions that caused or created an obvious, foreseeable danger of harm to Cade; and

b.  The fact there was no danger to Cade until such a danger was created by the actions and omissions of King, Jamison, Flowers, Cribb, Branham, and Britt; and

c.  In such other particulars as will be learned through discovery and proven at trial.

74. As a direct and proximate result of the foreseeable danger created by King, Jamison, Flowers, Cribb, Branham, and Britt, Cade suffered catastrophic injuries and incurred substantial damages.

75. Cade has suffered catastrophic bodily injury, which is permanent in nature, and will negatively impact him in myriad ways for the rest of his life.

76. Cade has incurred economic loss in the form of past medical bills, future medical bills, past wage loss, and future diminution of earning capacity.

77. Cade has incurred non-economic loss in the form of pain and suffering, mental anguish, emotional upset, loss of enjoyment of life, permanent impairment, and disfigurement.

78. Cade is entitled to recover actual and punitive damages from King, Jamison, Flowers, Cribb, Branham, and Britt, in an amount to be determined by a jury, as well as reasonable attorney's fees pursuant to 42 U.S.C. § 1983 and § 1988.

**FOR A THIRD CAUSE OF ACTION**
**(Negligence, Negligence Per Se, Gross Negligence)**
**Defendants SCDPS, MCSO, Sheriff Wallace, SCDNR**

79. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if set forth verbatim herein.

80. SCDPS, MCSO, Sheriff Wallace, SCDNR and their employees owed certain statutory and common law duties to citizens of South Carolina, including Cade.

81. SCDPS, MCSO, Sheriff Wallace, SCDNR and their employees breached these duties as set forth in the particulars below.

82. The employees of SCDPS, MCSO, Sheriff Wallace, and SCDNR were acting within the course and scope of their employment at all times relevant to this action.

83. SCDPS, MCSO, Sheriff Wallace, and SCDNR are liable for the actions and omissions of their employees pursuant to the South Carolina Tort Claims Act ("SCTCA").

84. The employees of SCDPS, MCSO, Sheriff Wallace, and SCDNR were careless, reckless, negligent, grossly negligent, and negligent per se in the following particulars:

   a. In the operation of their vehicles during this pursuit, including mirroring the reckless and dangerous actions and maneuvers of the fleeing driver;

   b. In failing to drive with due regard for the safety of others while operating in emergency mode and disregarding traffic laws, including driving well in excess of the posted speed limits and driving the wrong way against the flow of traffic;

   c. In violating South Carolina statutory law (including S.C. Code Ann. §56-5-760);

   d. In violating individual departmental policies, procedures, and general orders;

   e. In violating nationally accepted industry standards; and

   f. In such other particulars as will be learned through discovery and proven at trial.

85. SCDPS, MCSO, Sheriff Wallace, and SCDNR are additionally liable for their own careless and reckless actions and omissions pursuant to the South Carolina Tort Claims Act.

86. SCDPS, MCSO, Sheriff Wallace, and SCDNR were negligent and grossly negligent in

the following particulars:

    a.  In failing to have in place reasonable and appropriate policies and procedures related to the hiring and vetting of employees suitable for employment;

    b.  In failing to even follow their unreasonable and inappropriate policies and procedures related to the hiring of King, Jamison, Flowers, Cribb, Branham, and Britt, who were not suitable for employment and posed a foreseeable danger to others;

    c.  In failing to have in place reasonable and appropriate policies and procedures related to the training of employees on the United States Constitution, federal common law, South Carolina statutory law, state common law, industry standards, standards of care, and their own policies, procedures and general orders regarding vehicle pursuits;

    d.  In failing to even follow their unreasonable and inappropriate policies and procedures related to the training of King, Jamison, Flowers, Cribb, Branham, and Britt, who in the absence of such training, posed a foreseeable danger to others;

    e.  In failing to have in place reasonable and appropriate policies and procedures related to the supervision of employees;

    f.  In failing to even follow their unreasonable and inappropriate policies and procedures related to the supervision of King, Jamison, Flowers, Cribb, Branham, and Britt, who in the absence of such supervision, posed a foreseeable danger to others;

    g.  In failing to exercise the degree of care that reasonable law enforcement

employers would have under the same or similar circumstances with regard to the hiring, training, supervision, and retention of King, Jamison, Flowers, Cribb, Branham, and Britt; and

h. In such other particulars as will be learned through discovery and proven at trial.

87. The aforementioned particulars of negligence, gross negligence, and negligence per se by King, Jamison, Flowers, Cribb, Branham, and Britt, for which SCDPS, MCSO, Sheriff Wallace, and SCDNR are vicariously liable pursuant to the SCTCA, and by SCDPS, MCSO, Sheriff Wallace, and SCDNR themselves, for which they are directly liable pursuant to the SCTCA, each constitute multiple "occurrences" pursuant to the South Carolina Tort Claims Act and the interpretation of the same by South Carolina courts.

88. As a direct and proximate result of the careless, reckless, negligent, grossly negligent, and negligent per se actions and omissions of King, Jamison, Flowers, Cribb, Branham, Britt, SCDPS, MCSO, Sheriff Wallace, and SCDNR, Cade suffered catastrophic injuries and incurred substantial damages.

89. Cade has suffered catastrophic bodily injury, which is permanent in nature, and will negatively impact him in myriad ways for the rest of his life.

90. Cade has incurred economic loss in the form of past medical bills, future medical bills, past wage loss, and future diminution of earning capacity.

91. Cade has incurred non-economic loss in the form of pain and suffering, mental anguish, emotional upset, loss of enjoyment of life, permanent impairment, and disfigurement.

92. Cade is entitled to a jury instruction regarding multiple occurrences, a verdict form

allowing for the jury to find the same, and to an award of actual damages in an amount that will make him whole for his past and future economic and noneconomic damages.

<u>**FOR A FOURTH CAUSE OF ACTION**</u>
**(Loss of Consortium)**
**All Defendants**

93. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if set forth verbatim herein.

94. Leanne is Cade's wife and brings this cause of action pursuant to Section 15-75-20 of the South Carolina Code and common law pertaining to loss of consortium.

95. Loss of consortium refers to the impairment or harm to the marital relationship between spouses when one of them suffers serious injuries. It is the impairment to the intangible benefits of a relationship, such as companionship, society, guidance, aid, support, comfort, affection, services, and sexual relations.

96. A wife's loss of consortium is her claim for the impact on her and on her relationship with her husband that understandably resulted from his catastrophic injuries, his daily suffering from physical pain, the limitations in his ability to earn a living, and his inability to engage in the hobbies and activities that previously brought him enjoyment, much less the ability to perform services for the benefit of their household.

97. This is, of course, understandable, as a person enduring pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, anxiety, and depression is very different mentally and emotionally when compared to their pre-accident self. These changes can and often do negatively impact the spousal relationship regardless of the amount of love that exists between the husband and wife.

98. As a direct and proximate result of the carelessness, recklessness, negligence, gross

negligence, negligence per se, and conscience-shocking deliberate indifference to the lives and safety of the general public by King, Jamison, Flowers, Cribb, Branham, Britt, SCDPS, MCSO, Sheriff Wallace, and SCDNR, Cade suffered catastrophic injuries.

99. This, in turn, has resulted in a loss of consortium for Leanne, who has suffered and continues to suffer from the loss of companionship, society, services, aid, support, comfort, and affection of her spouse, for which she is entitled to recover actual damages from SCDPS, MCSO, Sheriff Wallace, and SCDNR, as well as actual damages, punitive damages, and reasonable attorney's fees from King, Jamison, Flowers, Cribb, Branham, and Britt, in amounts to be determined by a jury of her peers at the trial of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following:

a.    A trial by jury;

b.    That the jury be instructed on the definition of multiple "occurrences," as interpreted by multiple South Carolina circuit and district courts and provided a verdict form allowing for the finding of the number of occurrences;

c.    Judgment against Defendants SCDPS, MCSO, Sheriff Wallace, and SCDNR for actual damages pursuant to the South Carolina Tort Claims Act;

d.    Judgment against Defendants King, Jamison, Flowers, Cribb, Branham, and Britt for actual and punitive damages pursuant to 42 U.S.C. 1983 and reasonable attorney's fees pursuant to 42 U.S.C. 1988; and

e.    For such other relief as the Court may deem just and proper.

CLAWSON FARGNOLI UTSEY, LLC

s/ Samuel R. Clawson, Jr.
Samuel R. Clawson, Jr.
Christy R. Fargnoli
Laura Wilkes-D'Amato
The Presqu'ile House
2 Amherst Street
Charleston, SC 29403
Phone: (843) 970-2700
sam@cfulaw.com
christy@cfulaw.com
laura@cfulaw.com

Attorneys for Plaintiff

July 29, 2024
Charleston, South Carolina